**Jeffrey VERDIN, Appellant,**

v.

**WEEKS MARINE INC; International Union of Operating Engineers, Local 25, Marine Division; John Does 1–10, (said names being fictitious) ABC Corporations 1–100, (said corporations being fictitious).**

No. 03–4571.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 25, 2005.

Decided Feb. 16, 2005.

Fred Shahrooz–Scampato, Westfield, NJ, for Appellant.

Patricia A. Smith, Ballard, Spahr, Andrews & Ingersoll, Voorhees, NJ, for Appellees.

Before: SCIRICA, Chief Judge, RENDELL and FISHER, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Jeffery Verdin appeals the order of the District Court's grant of summary judgment to Weeks Marine, Inc. ("Weeks"), foreclosing him from proceeding with his Title VII and Section 1981 claims. Verdin contends that the District Court erred by failing to apply the continuing violation theory to his Title VII and Section 1981 claims. Furthermore, Verdin contends that he has set forth a prima facie claim for discrimination and has raised genuine issues of fact for both his hostile work environment and retaliation claims sufficient to defeat summary judgment. We will affirm the grant of summary judgment in favor of Weeks.

## I. Background

As the parties are familiar with the facts, we will recite only those necessary to our determination. Verdin, a Native American, was formerly employed by Weeks from June 1997 to May 2000. Weeks is a large marine construction and dredging organization in the United States that operates over thirty tugboats ("tugs") in the waters off the coasts of North and South America, as well as in the Caribbean Sea. Employed as a First Captain of the Tug Matthew, Verdin alleges that Tug Master Mike Scheibe had an adversarial and harassing attitude which created a hostile working environment. Over the course of his employment with Weeks, Verdin alleges that a variety of discriminatory conduct occurred. While employed on the Tug Robert in 1998, Verdin asserts that Tug Master Ronald Bearb ("Bearb") encouraged him to drink alcohol as a result of Bearb's stereotypical belief that alcohol would subdue and placate Native Americans. Later that year, Verdin overheard Bearb recite a story about a Native American bar lounge where people acted like savages and were willing to cut each others throats over a 25-cent pool game.[1]

Weeks terminated Verdin's employment from the Tug Robert in 1998 due to escalating hostilities in his interaction with other personnel. Following this termination, Verdin successfully won an arbitration award granting reinstatement and full back pay with benefits.

In August of 1999, several months after the arbitration award, Verdin was reinstated on the Tug Robert. However, due to continuing problems with crew members, Verdin was transferred to the Tug Shelby. On April 25, 2000, the night prior to his transfer, Verdin overheard Bearb state, "I finally got rid of that nigger" to his son in a private conversation.

On May 6, 2000, Verdin threatened and harassed Scowman Phillip Clarke, a black South American, stating, "we don't like foreigners-we beat them with baseball bats in the head." The next day, May 7, 2000, he repeated the same comment over the tug's loudspeaker. Scowman Clarke's complaints led to an investigation with several employees confirming the incident. As a result of the investigation, Verdin's employment with Weeks was terminated on or about May 23, 2000. Verdin denies that the incident ever occurred, arguing that the accusation was pretext for his racially motivated termination.

On March 12, 2001, Verdin filed a charge with the EEOC against Weeks alleging: (1) plaintiff was "constantly" referred to as a "nigger," creating a hostile work environment; (2) Weeks failed to promote him to Tug Master; (3) Weeks failed to redress his discrimination complaints; and (4) Weeks terminated him on May 23, 2000 because of his race and in retaliation for reporting Weeks to his union. Weeks moved for summary judgment on all claims. The District Court, finding that the majority of Verdin's claims were time-barred and the remainder failed to satisfy the requirements for a prima facie case, granted summary judgment on all claims.

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Standard of Review

Our standard of review of the District Court's entry of summary judgment in favor of Weeks is plenary. *See Pacitti v. Macy's,* 193 F.3d 766, 772 (3d Cir.1999);

---

1. Verdin does not claim that the word "savages" was used in the incident.

*Hines v. Consolidated Rail Corp.,* 926 F.2d 262, 267 (3d Cir.1991). A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In reviewing the grant of summary judgment, we must affirm if the record evidence submitted by the non-movant "is merely colorable or is not significantly probative." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

### III. Analysis

#### A. *Title VII Claims*

■ As the District Court noted, to pursue a Title VII claim, an individual has 300 days from the date of the discriminatory act to file a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e–5(e). Absent a continuing violation, all discriminatory acts that are alleged to have occurred more than 300 days prior to the EEOC filing are time-barred. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Verdin filed his EEOC charge on March 12, 2001; therefore, absent a continuing violation, all alleged incidents which occurred before May 16, 2000 are barred by the 300–day limitations period. We agree with the District Court that Verdin's charge does not reflect a continuing violation and that he exhausted his administrative remedies only as to his termination in May 2000.

■ To establish a prima facie claim for discriminatory termination, an employee must offer sufficient evidence that: (1) he was a member of the protected class, (2) he qualified for the position he sought, (3) he was fired, and (4) nonmembers of the protected class were treated more favorably. *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 318–19 (3d Cir. 2000). We agree with the District Court's conclusion that because Verdin has not adduced evidence demonstrating that non-Native American employees were treated more favorably, he cannot establish the fourth prong of a prima facie case for discrimination, and, consequently, this claim fails. Furthermore, even if he established a prima facie case, Verdin has not raised a genuine issue of material fact with regard to Weeks' stated reasons for his termination, *i.e.,* that he harassed a subordinate employee.

■ Verdin next asserts that he successfully established a prima facie case for retaliatory termination under Title VII. To establish a prima facie claim for retaliation, an employee must show he engaged in a statutorily protected activity, that the employer took adverse action against him, and that there is a causal connection between the two events. *See Goosby,* 228 F.3d at 323. We agree with the District Court's conclusion that this claim fails because Verdin has not adduced evidence that there was a causal connection between his termination and engagement in any protected activities.

Regarding Verdin's hostile work environment, to establish a prima facie case, he must show that: (1) he suffered intentional discrimination because of his membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected Verdin; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability. *Kunin v. Sears Roebuck & Co.,*

175 F.3d 289, 293 (3d Cir.1999). As Verdin relies on Bearb's 1998 comments and other incidents which occurred outside the May 16, 2000 filing period, these incidents are time-barred and Verdin's hostile work environment claim fails.

### B. Section 1981 Claims

■ Regarding Verdin's Section 1981 claims, we use the same analysis in assessing the substantive merit of the claims and the applicability of a continuing violation theory that we apply for Title VII claims, except, at least with respect to the hostile work environment claim, there is a four-year statute of limitations. See generally Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836 (2004), 158 L.Ed.2d 645, 2004 WL 423554 (2004).[2] As noted in the District Court's opinion, Verdin filed his Section 1981 claims on September 28, 2001. Upon application of a four-year limitations period and absent the application of a continuing violation theory, all events which occurred before September 28, 1997 are time-barred for the purposes of Verdin's Section 1981 claims.[3] As this limitations period corresponds with nearly all of Verdin's employment with Weeks, and Verdin cites no incidents prior

to September 28, 1997, none of the incidents Verdin alleges are barred from consideration.

■ Regarding Verdin's hostile work environment claim, the same standard used under Title VII applies under Section 1981. See McKenna v. Pac. Rail Serv., 32 F.3d 820, 826 n. 3 (3d Cir.1994). Verdin contends that when all the incidents he alleges are assessed as a whole, the sum constitutes "pervasive and regular" discrimination. See West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir.1995). However, even when considering all the incidents Verdin alleges, see supra Part I, our conclusion is the same as that of the District Court-the comments and events that Verdin relies on to meet the pervasive and regular requirement do not demonstrate the ongoing pattern of racially offensive conduct that is required to show a prima facie case. The majority of the events which Verdin relies upon occurred in 1998, followed by a two-year gap and a final comment by Bearb on April 28, 2000. Many of these incidents were "mere offensive utterances" that Verdin overheard, see Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and a time line of these incidents

**2.** The District Court applied a two-year statute of limitations to Verdin's Section 1981 claims. During the pendency of this appeal, however, the United States Supreme Court ruled that Section 1981 claims alleging a cause of action arising under an Act of Congress enacted after December 1, 1990 is governed by the federal "catch-all" four-year statute of limitations under 28 U.S.C. § 1658(a). Jones, 124 S.Ct. at 1845. Because hostile work environment, wrongful termination, and failure to transfer claims "arise under" the Civil Rights Act of 1991 in the sense that that Act defined the key "make and enforce contracts" language in Section 1981 to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," 42 U.S.C. § 1981(b) (1991), these

causes of action are governed by the four-year statute of limitations in 28 U.S.C. § 1658. Id. The Jones decision does not impact the substantive analysis of Verdin's claims because courts utilize the same analysis for the merits of Title VII and Section 1981 claims. See McKenna v. Pac. Rail Serv., 32 F.3d 820, 826 n. 3 (3d Cir.1994); Watkins v. Nabisco Biscuit Co., 224 F.Supp.2d 852, 873–74 (D.N.J.2002).

**3.** For the reasons discussed infra, Verdin's Section 1981 claims lack substantive merit when applying either a four-year statute of limitations or a two-year statute of limitations, as the District Court applied. Consequently, we will assume, without deciding, that the four-year statute of limitations applies to all of Verdin's Section 1981 claims.

alone demonstrates that they were clearly neither pervasive nor regular. Without this element of a prima facie case, this claim fails.

Because Verdin's Section 1981 discrimination and retaliation claims are based on the same incidents and analyzed under the same standards as those of his coordinate Title VII claims, these claims fail for the same reasons the Title VII claims failed. *See supra* Part III.A.

### IV. Conclusion

For the foregoing reasons, we will AFFIRM the District Court's order.