Pablo **FERNANDEZ**, Plaintiff,

v.

**M & L MILEVOI MANAGEMENT, INC., Mario Milevoi, Lucia Milevoi, and John Milevoi, Defendants.**

No. 04–CV–2937 (ILG).

United States District Court, E.D. New York.

March 7, 2005.

Laura Sager, Sharon Chatin–Pollak and John Guzman (law students), Washington Square Legal Services, Inc., New York, NY, Deborah Axt, Brooklyn, NY, for Plaintiff.

Todd H. Girshon, Matthew A. Steinberg, Jackson Lewis LLP, New York, NY, for Defendants.

### MEMORANDUM AND ORDER

GLASSER, District Judge.

### INTRODUCTION

Plaintiff Pablo Fernandez ("Plaintiff" or "Fernandez") filed this discrimination case against his former employer, M & L Milevoi Management ("M & L") and three of its agents (collectively, "Defendants"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). Plaintiff claims that he was terminated from his job as a porter in a residential building managed by Defendants because of his race and national origin. Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), Defendants now move to dismiss the complaint arguing that the Court lacks subject matter jurisdiction over the Title VII claim because M & L does not qualify as an "employer," the claims against the individual defendants should be dismissed because Title VII does not provide for individual liability, and the Section 1981 claim is barred by a three-year statute of limitations. In opposition, Plaintiff argues that even if M & L's status as an "employer" must await a determination on the merits, it does not, at this stage of the proceedings, divest the Court of subject matter jurisdiction. Further, pursuant to the Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 124 S.Ct. 1836, —— L.Ed.2d —— (2004), Plaintiff argues that his Section 1981 claim is governed by a four-year statute of limitations and is therefore timely.

For the reasons set forth below, Defendants' motion to dismiss the complaint is granted in part and denied in part.

### BACKGROUND

In October 1998, M & L, through Mario L. Milevoi, hired Plaintiff, who was born in Ecuador, as a porter in a residential building (the "Building") located in Elmhurst, New York. (Compl. ¶ 20). In this position, Plaintiff was responsible for cleaning and maintaining the Building which M & L managed. (*Id.* ¶ 19). In or about May 2000, Mario Milevoi ceded day-to-day management control over the Building to his son, John, because of poor health. (*Id.* ¶ 21). Mario and John are of Yugoslav origin, as was the superintendent of the Building, Nreka Ulic. (*Id.* ¶ 27).

Mario Milevoi terminated Plaintiff's employment on May 25, 2001, advising him "you are a good person, but another man is coming to work the job." (Compl. ¶ 23). John Milevoi was the alleged decisionmaker. (*Id.* ¶ 24). The next day, M & L replaced Plaintiff with a Caucasian man of Yugoslav origin. (*Id.* ¶ 26). That man was terminated one month later for poor job performance, and he was replaced by a Caucasian man of Yugoslav origin. (*Id.*)

As further evidence of discrimination, Plaintiff alleges that John Milevoi told Mr. Ulic not to rent apartments to "Blacks or Hispanics—just Koreans." (Compl. ¶ 29). Since in or about 1997, Defendants have not rented any apartments to individuals of Latino or Latina origin. (*Id.* ¶ 31).

Before instituting this suit, Plaintiff timely filed a charge of discrimination with the New York State Division of Human Rights, and also with the Equal Employment Opportunity Commission (the "EEOC"). (Compl. ¶ 9). Within ninety days after receiving a right to sue letter from the EEOC, Plaintiff filed this action. (*Id.* ¶ 11).

### DISCUSSION

#### I. PLAINTIFF'S TITLE VII CLAIMS

Defendants move to dismiss Plaintiff's Title VII claim, pursuant to Fed.R.Civ.P.

12(b)(1) and (6), on the grounds that: (1) the Court lacks subject matter jurisdiction over M & L because it is not an "employer" within the meaning of Title VII[1]; and (2) Title VII does not impose liability on the individual defendants. Each of these arguments is addressed in turn.

### A. Whether the Court Lacks Subject Matter Jurisdiction to Hear Plaintiff's Title VII Claim

██ In general, a court may grant a motion for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) when it lacks either a statutory or constitutional predicate to decide the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Where the defendants challenge the factual basis of jurisdiction, the Court may consider affidavits and other material beyond the pleadings. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n. 6 (2d Cir.2001).

██ In this case, Defendants argue that the Court lacks subject matter jurisdiction because M & L is not an "employer" as defined in Title VII. However, the Second Circuit has decided that specific issue against Defendants. In *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 365 (2d Cir. 2000), the district court dismissed a Title VII claim because the defendant did not satisfy Title VII's fifteen-employee requirement, but the court exercised supplemental jurisdiction over certain related state-law claims, finding that the fifteen-employee requirement was not jurisdictional. Accordingly, the court held that dismissal of the Title VII claim did not divest it of supplemental jurisdiction over the related state-law claims. *Da Silva v. Kinsho Int'l Corp.*, 210 F.Supp.2d 241, 246–47 (S.D.N.Y.2000). The Second Cir-

cuit affirmed, holding that the threshold number of employees established by the definition of "employer" set forth in Title VII is not a jurisdictional issue, provided that Plaintiff "makes a non-frivolous claim that Defendant is a covered employer." *Da Silva*, 229 F.3d at 366.

Here, M & L asserts the claim is frivolous based upon an affidavit that it employed less than fifteen persons. (Defs. Reply Mem. at 8). That claim is predicated upon a dictum in *Da Silva* suggesting that the words "brought under" in 42 U.S.C. § 2000e–5(f)(3) conferring jurisdiction upon district courts of actions "brought under" Title VII may be understood to exclude claims that frivolously seek to invoke "arising under" jurisdiction, citing *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). *Da Silva*, 229 F.3d at 365. A reading of *Bell*, however, would readily reveal that it provides no support for Defendants' claim and might lead to the conclusion that the claim is, itself, frivolous. The plaintiff there sued FBI agents in a federal district court alleging federal question jurisdiction arising out of the Fourth and Fifth Amendments to the Constitution. The defendants moved for summary judgment on the grounds that the FBI agents acted within the scope of their authority, and that the searches and seizures were incident to a lawful arrest and therefore valid. They filed affidavits in support of their motion which was granted for want of federal jurisdiction and affirmed on appeal. The Supreme Court reversed and for reasons peculiarly applicable here:

> Before deciding that there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is

---

1. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C.A. § 2000e(b).

drawn so as to claim a right to recover under the Constitution and laws of the United States. For to that extent 'the party who brings a suit is master to decide what law he will rely upon, and * * * does determine whether he will bring a 'suit arising under' the * * * (Constitution or laws) of the United States....' (citation omitted)

X X X

Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. *For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.* (emphasis added).

*Bell,* 327 U.S. at 681–82, 66 S.Ct. 773.

*Da Silva* is not to the contrary. There, too, the Court held that the plaintiff's "failure to prove single employer status is not a ground for dismissing for lack of subject matter jurisdiction or even for failure to state [a] claim; it is a ground for defeating her federal claim on the merits." 229 F.3d at 365.

Defendants argue in reply that *Da Silva* is not dispositive to the Court's determination of their motion filed under Fed. R.Civ.P. 12(b)(1) because "both prior and subsequent to *Da Silva,* courts in New York and elsewhere throughout the country have held that a defendant's inability to satisfy Title VII's definition of 'employer' can be a jurisdictional defect."[2] (Defs. Reply Mem. at 8). The cases which Defendants cite, however, are inapposite. In *Perez v. International Brotherhood of Teamsters,* 2002 WL 31027580, at *3 (S.D.N.Y. Sept. 17, 2002), 2002 U.S. Dist.

LEXIS 16985, at *8–9, the international union argued on a motion to dismiss that it was not plaintiff's employer because it did not control the terms and conditions of his employment, not that the defendant union failed to meet the fifteen-employee requirement. Moreover, and perhaps most significant, the court in *Perez* failed to cite, let alone distinguish, *Da Silva.* It merely cited to a district court case that pre-dated *Da Silva* for the proposition that "subject matter jurisdiction only exists in a Title VII employment discrimination case if the defendant meets the statutory definition of 'employer.'" *Perez,* 2002 WL 31027580, at 3, 2002 U.S. Dist. LEXIS 16985, at *9 (citing *Astarita v. Urgo Butts & Co.,* 1997 WL 317028, at *3 (S.D.N.Y. June 10, 1997))1997 U.S. Dist. LEXIS 8112. Further, Defendants' citations to *Scarfo v. Ginsberg,* 175 F.3d 957, 960 (11th Cir. 1999), *cert. denied,* 529 U.S. 1003, 120 S.Ct. 1267, 146 L.Ed.2d 217 (2000), and *Greenlees v. Eidenmuller Enterprises, Inc.,* 32 F.3d 197, 198 (5th Cir.1994), are startling in light of *Da Silva's* explicit rejection of the holding of those opinions which "ruled, with little or no discussion, that the requisite number of employees is jurisdictional in Title VII cases." *Da Silva,* 229 F.3d at 364–65 (citing cases).

The statute conferring jurisdiction upon the Court plainly and simply states: "Each United States district court ... shall have jurisdiction of actions brought under this subchapter [Title VII]." 42 U.S.C. § 2000e–5(f)(3). "This formulation is notably different from the authorization of diversity jurisdiction, 28 U.S.C. § 1332, which makes a threshold fact, the amount in controversy, an explicit ingredient of subject matter jurisdiction. In contrast to

**2.** Notably, Defendants failed to cite *Da Silva* in their opening brief. *See generally* 22 N.Y.C.R.R. 1200.37[b] ("In presenting a matter to a tribunal, a lawyer shall disclose:

(1)[c]ontrolling legal authority known to the lawyer to be directly adverse to the position of the client and which is not disclosed by opposing counsel").

the specific threshold requirement of section 1332, section 2000e–5(f)(3) requires only that the action is 'brought under' Title VII." *Da Silva,* 229 F.3d at 365. "Surely, [Fernandez] has 'brought' [his] action under Title VII, in the sense that [he] has endeavored to plead that an employer covered by Title VII has violated its prohibition." *Id. Da Silva* therefore requires the Court to deny Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). *See Rovira v. New York Apparel Sales,* 2002 WL 1471557, at *2 (E.D.N.Y. May 31, 2002) (denying motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) based on *Da Silva* ) (Glasser, J.).[3]

Defendants have submitted evidence outside the complaint in support of their argument that M & L is not a covered employer under Title VII. However, the Court exercises its discretion not to convert their motion to one for summary judgment because Plaintiff has not had an opportunity to present evidence in response. *See, e.g., United States v. Rivieccio,* 661 F.Supp. 281, 288 (E.D.N.Y.1987) ("Although both sides have briefed the issue in depth, the court is reluctant to convert the motion to dismiss into one for summary judgment, *see* Fed.R.Civ.P. 12(b), because there has yet to be discovery on the question") (Glasser, J.); *cf. Rovira,* 2002 WL 1471557, at *2 (since the plaintiff "has had an opportunity to present evidence in response" to the defendants' motion to dismiss, it is converted to a motion for summary judgment). At this juncture, having received only evidence

from the Defendants on the fifteen-employee requirement of Title VII, the Court cannot say definitively that discovery will not bolster Plaintiff's position on this issue.

### B. Title VII Claims Against the Individual Defendants

Pursuant to Fed.R.Civ.P. 12(b)(6), the individual defendants—Mario, Lucia and John Milevoi—move to dismiss the Title VII claim asserted against them individually. Plaintiff consents to the dismissal of these claims. (Pl. Mem. at 2). The law is well-settled that individuals cannot be held liable under Title VII. *See, e.g., Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 56 (2d Cir.2004); *Tomka v. Seiler,* 66 F.3d 1295, 1313 (2d Cir.1995), *abrogated on other grounds by, Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Therefore, the Court grants Defendants' motion to the extent that it seeks dismissal of the Title VII claims against the individual defendants.

### II. WHETHER PLAINTIFF'S SECTION 1981 CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

■ Defendants argue that Plaintiff's Section 1981 claim is covered by a three-year statute of limitations period and is therefore untimely.[4] It is undisputed that if a three-year statute of limitations applied, Plaintiff's Section 1981 claim would be untimely.[5] As set forth below, however, the Court finds Defendants' argument unconvincing.

---

**3.** As noted above, *Da Silva* also held that the Court could not construe Defendants' motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) because the fifteen-employee requirement of Title VII "is not a ground for dismissing for ... failure to state a claim." 229 F.3d at 365 (cited in *Rovira, supra* ).

**4.** Section 1981 states as follows: "All persons within the jurisdiction of the United States

shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

**5.** Plaintiff was terminated on May 25, 2001 and filed this case on July 14, 2004.

In *Jones v. R.R. Donnelley & Sons Company*, 541 U.S. 369, 124 S.Ct. 1836, 1845, —— L.Ed.2d —— (2004) (hereinafter "*Donnelley* "), the United States Supreme Court held that claims under the 1991 amendments to Section 1981 are governed by the "catchall" four-year statute of limitations prescribed by 28 U.S.C. § 1658.[6] Before *Donnelley*, the limitations period for Section 1981 claims was determined by *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), in which the Supreme Court held that the proper statute of limitations was to be drawn from analogous state tort law provisions. That decision meant, however, that the applicable statute of limitations in each case depended on the state law under which the claim arose, so there was inconsistency among the circuits with respect to the timeliness of Section 1981 claims. *Donnelley*, 124 S.Ct. at 1842–44. Therefore, the issue on appeal to the Supreme Court in *Donnelley* was whether the Illinois two-year statute of limitations or the federal "catchall" four-year statute of limitations should be applied to the plaintiffs' claims.[7]

In *Donnelley*, the Supreme Court decreed uniformity when it held that a Section 1981 claim is governed by the four-year statute of limitations if it arose under a post–1990 Act of Congress. *Id.* at 1842–44. In the specific case before it, the Supreme Court held that the employees' wrongful termination, hostile work environment, and failure-to-transfer claims were governed by the four-year statute of limitations because they were made possible by the 1991 amendments to Section 1981. The Court concluded "[t]hat the

history ... [of] the enactment of § 1658 strongly supports an interpretation that fills more rather than less of the void that has created so much unnecessary work for federal judges" in light of the absence of, among other things, a uniform statute of limitations for Section 1981 claims. *Id.* at 1845. The Court therefore found that 28 U.S.C. § 1658 applied to the post–1990 amendment to federal law which, in effect, created a new cause of action. In short, the 1991 amendments to Section 1981 " 'enlarged the category of conduct that is subject to § 1981 liability.' " *Id.* at 1846.

Congress amended Section 1981 by adding § 101 of the Civil Rights Act of 1991: "[f]or purposes of this section, the term, 'make and enforce contracts' includes the making, performance, modification, and termination of all benefits, privileges, and conditions of the contractual relationship." Pub.L. 102–166, 105 Stat. 1071, codified in 42 U.S.C. § 1981(b). That amendment followed closely on the heels of the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 177–78, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which held that although Section 1981's language "make and enforce contracts" prohibited discriminatory hiring, it did not prohibit any other form of discrimination following the formation of the employment relationship, including, but not limited to, termination. The 1991 amendments to Section 1981 made clear that racial discrimination in the making and enforcement of contracts applied "to all phases and incidents of the contractual relationship, including discriminatory contract terminations." *Rivers v. Roadway Express*, 511 U.S. 298,

---

**6.** 28 U.S.C. § 1658 provides that: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." That statute was passed by Congress on December 1, 1990.

**7.** The application of this "catchall" provision was in question because, although Section 1981 was originally enacted before 1990, it was amended by the Civil Rights Act of 1991.

302, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994).

In support of their position against retroactivity, Defendants rely principally on *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir.2004), which the Second Circuit decided a little more than two months after *Donnelley*. (Defs. Mem. at 6–7; Defs. Reply Mem. at 2–4). In *Patterson*, however, the Second Circuit did not discuss whether *Donnelley* should be applied retroactively. In fact, it did not even cite *Donnelley*. Rather, the Second Circuit merely observed that the employee's Section 1981 (and Section 1983) claims were timely since the events complained of "occurred in 1998 and 1999" with "Patterson having initiated the present action in 2000." *Patterson*, 375 F.3d at 225. While the parties devote considerable space and effort in their briefs analyzing the court's statement in *Patterson* that "the statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years," a plain reading of the facts reveals that even if *Donnelley* was not applied retroactively, that would not have made a difference because the employee's Section 1981 claim was timely under both pre- and post-*Donnelley* jurisprudence.[8] Notably, and contrary to Defendants' position, the Second Circuit recently recognized that *Patterson* "was superseded in part by the Civil Rights Act of 1991," a clear reference to *Donnelley*. *Iuorno v. DuPont Pharmaceuticals Co.*, 2005 WL 236618, at *1 n. 4 (2d Cir. Jan.31, 2005) (unpublished opinion).

To bolster their argument, and in violation of the Second Circuit's local rule,[9] Defendants also cite *Franklin v. City of New York*, 99 Fed.Appx. 315, 316 (2d Cir. May 25, 2004) (unpublished), an opinion decided twenty-two days after *Donnelley*. In *Franklin*, the district court granted summary judgment to defendant Dimaggio on the plaintiff's Section 1981 claim based on the then-applicable three-year statute of limitations. Defendants' argument that *Franklin* stands for the refusal of the Second Circuit to apply *Donnelley* to pending cases is unpersuasive because the court noted that the employee did not challenge on appeal the district court's statute of limitations holding. *Id.*

Defendants also argue that *In Re Enterprise Mortgage Acceptance Co., LLC Securities Litigation*, 295 F.Supp.2d 307 (S.D.N.Y.2003), *aff'd*, 391 F.3d 401 (2d Cir. 2004) (hereinafter "*Enterprise Mortgage*"), "is squarely illustrative of the . . . 'timeless' and 'universal' principle that 'the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place.'" (Defs. Reply Mem. at 5). In that case, two institutional investors filed securities fraud claims, which were withdrawn because they were untimely. *Enterprise Mortgage*, 295 F.Supp.2d at 309. After the enactment of the Sarbanes–Oxley Act ("SOX"), these same investors filed a new complaint alleging federal securities claims regarding the same purchases that were the subject matter of their prior suits. *Id.* In granting the defendants' motion to dismiss, the court held, among other things, that Congress did not clearly intend SOX to resuscitate the plaintiffs' earlier filed, time-barred claims. 295 F.Supp.2d at 312–16. Therefore, *Enterprise Mortgage* is not relevant to the Court's determination whether to

---

**8.** The case which the Second Circuit cited for the proposition that the statute of limitations for a claim under Section 1981 is three years was *Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir.) (*per curiam*), *cert. denied*, 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990), decided more than thirteen years prior to *Donnelley*.

**9.** The Second Circuit prohibits the citation of unpublished summary orders. *See Da Silva*, 229 F.3d at 364 n. 4 (citing 2d Cir. R. § 0.23).

apply *Donnelley* to the pending case before it.

It neither makes good sense nor good law not to apply *Donnelley* retroactively because the Supreme Court held there, in effect, that Section 1981 claims have been governed by a four-year statute of limitations since the passage of 28 U.S.C. § 1658 in 1990 and the amendments to Section 1981 a year later. To hold otherwise would frustrate the uniformity which the *Donnelley* decision sought to ensure for the application of Section 1981 claims.

Finally, the Court's conclusion that *Donnelley* should be applied to pending cases is confirmed by each court to have addressed this issue to date, including all of the circuit courts of appeals, and several district courts in this Circuit. *See Verdin v. Weeks Marine Inc.*, 2005 WL 357006, at *3 n. 2, 124 Fed.Appx. 92, 96 n. 2 (3d Cir. Feb.16, 2005) (unpublished opinion); *White v. BFI Waste Services, LLC*, 375 F.3d 288, 292 (4th Cir.2004); *Jackson v. Homechoice, Inc.*, 368 F.3d 997, 999 (8th Cir. 2004); *Fonseca v. Sysco Food Serv. of Arizona*, 374 F.3d 840, 845 (9th Cir.2004); *Banks–Holliday v. American Axle & Mfg., Inc.*, 2005 WL 189724, at *1 (W.D.N.Y. Jan.24, 2005); *Bedden–Hurley v. New York City Bd. of Educ.*, 2005 WL 53282, at *3 (S.D.N.Y. Jan.11, 2005); *Thomas v. New York City Health and Hosps. Corp.*, 2004 WL 1962074, at *7 (S.D.N.Y. Sept.2, 2004); *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, 2004 WL 1533831, at *3 (E.D.N.Y. July 9, 2004); *Arnold v. Cargill Inc.*, 2005 WL 165387, at *2 (D.Minn. Jan.21, 2005); *Lakshman v. Univ. of Maine Sys.*, 328 F.Supp.2d 92, 109–10 (D.Me.2004). Consistent with the holding of these cases, and the analysis above, the Court concludes that a four-year statute of limitations applies to Plaintiff's Section 1981 claim.[10] Accordingly, Defendants' motion to dismiss that claim is denied.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is granted in part and denied in part.

SO ORDERED.

---

**10.** With respect to Defendants' other arguments, the Court has considered them but finds they lack merit.